Lawrence AINSLIE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–106C.

United States Court of Federal Claims.

Jan. 6, 2003.

---

Michael J. Gaffney, Washington, D.C., for the plaintiff.

Hillary Adrienne Stern, U.S. Department of Justice, Washington, D.C., with whom was David M. Cohen, U.S. Department of Justice, for the defendant.

## OPINION

ALLEGRA, Judge.

This case was filed by a former Army National Guard technician seeking back pay stemming from the Department of Defense's violation of 5 U.S.C. § 3329(b). As originally enacted, that section provided that military reserve technicians who had completed a designated period of service and were separated by reason of failing to serve in a military reserve component, "shall, if appropriate written application is submitted within 1 year after the date of separation, be offered a position . . . not later than 6 months after the date of the application." Plaintiff did not receive a timely offer under this provision— he received his offer approximately 12 months after his application—and seeks back pay for the approximate six month period that he should have been employed had the statute been followed. Defendant has filed a motion to dismiss this case for lack of jurisdiction and failure to state a claim under RCFC 12(b)(1) and 12(b)(6), respectively. For the following reasons, this court finds that plaintiff's complaint fails to state a claim.

1. For purposes of RCFC 12(b), the Court must construe the plaintiff's allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

2. Four other similar-situated individuals joined in this suit.

3. A 1996 amendment to the statute limited its impact by substituting "be provided placement

## I. Facts [1]

Effective December 31, 1994, plaintiff, Lawrence J. Ainslie (plaintiff or Mr. Ainslie), was involuntarily separated from service as a WG–10 Arizona Army National Guard (AANG) technician. At the time of his separation, the version of section 3329(b), referenced above, was in force. Plaintiff submitted his job application on December 14, 1994, and, under section 3329(b), should have received an employment offer no later than six months thereafter. However, he did not receive such an offer until January 8, 1996, on which day he immediately accepted the offer and began work.

Subsequently, Mr. Ainslie filed suit in the United States District Court for the District of Columbia seeking to have his service record amended to show July 31, 1995, as the effective date of his appointment, allegedly consistent with the mandate of section 3329 that an offer of employment be made "not later than 6 months after the date of the application." [2] On March 25, 1999, the district court granted the requested relief and ordered the Secretary of Defense to "change the effective date of plaintiff Ainslie's competitive service appointment to July 31, 1995." *Kramer, et al. v. Secretary of Defense*, 39 F.Supp.2d 54, 55 (D.D.C.1999).[3] While the Secretary originally appealed this order, that appeal was subsequently dismissed.

Mr. Ainslie's record was amended pursuant to the court's order. Yet, defendant has steadfastly refused plaintiff's request for back pay for the period July 31, 1995 through January 7, 1996, the period corresponding to the time during which plaintiff would have been employed had the Department of Defense complied with section 3329(b). On February 28, 2001, plaintiff filed a complaint in this court seeking this pay. Due to the

consideration in a position described in subsection (c) through a priority placement program of the Department of Defense" for the phrase "be offered a position" in the original subsection (b). The District Court in *Kramer*, 39 F.Supp.2d at 56 n. 1, found that this amendment "does not apply to plaintiffs' claims, however, because it does not include a clear statement of congressional intent to eliminate any substantive rights that arose under the original law."

revised effective date of his appointment, Mr. Ainslie maintains he is entitled to such pay under the Back Pay Act, 5 U.S.C. § 5596. Plaintiff subsequently filed an amended complaint on November 27, 2001, averring that he is also entitled to recover damages, equivalent to the unpaid wages for the identical period, under 5 U.S.C. § 5343(a).[4]

On September 10, 2001, defendant filed its motion to dismiss. Oral argument on this motion was conducted on May 6, 2002. The court requested supplemental briefing on two issues, which briefing was completed on August 14, 2002.

## II. Discussion

Under the Tucker Act, this court has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States ..." 28 U.S.C. § 1491(a)(1) (1994). The Tucker Act, however, merely confers jurisdiction on this court and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Wells v. United States*, 46 Fed.Cl. 178, 180 (2000). Along these lines, the Supreme Court has instructed that in order to bring a claim against the United States founded on a statute or regulation, the provisions relied upon must contain language that can fairly be interpreted as mandating recovery of compensation from the government—a "money-mandating" provision. *See United States v. Mitchell*, 463 U.S. 206, 216–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also Tippett v. United States*, 185 F.3d 1250, 1254–55 (Fed.Cir.1999); *United States v. Connolly*, 716 F.2d 882, 886–87 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

In the case *sub judice*, plaintiff asserts that his Tucker Act claim is based upon an Act of Congress, namely, the Back Pay Act, 5 U.S.C. § 5596 (1994). In pertinent part, the latter statute provides:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred.

5 U.S.C. § 5596(b)(1). The Federal Circuit has held that the Back Pay Act is merely "derivative" in application, *Connolly*, 716 F.2d at 887, and is money-mandating only when a plaintiff's claim is "based on violations of statutes or regulations covered by the Tucker Act." *Worthington v. United States*, 168 F.3d 24, 26 (Fed.Cir.1999); *see also Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed.Cir.1984); *Montalvo v. United States*, 231 Ct.Cl. 980, 982, 1982 WL 25825 (1982). As stated more succinctly by defendant on brief, "[t]he Back Pay Act can only be considered a money-mandating statute when all of its requirements are met."[5]

Confidently brandishing various findings made by the district court in *Kramer*, plain-

---

4. This section provides that "[t]he pay of prevailing rate employees shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates." 5 U.S.C. § 5343(a).

5. *See also United States v. Hopkins*, 427 U.S. 123, 128, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) (per curiam) ( "The Back Pay Act is the means by which appointed employees subjected to unjusti-

fied personnel action are given a cause of action against the United States"); *United States v. Testan*, 424 U.S. 392, 407, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Bush v. Lucas*, 462 U.S. 367, 385 n. 25, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Carpenter v. United States*, 28 Fed.Cl. 195, 198–99 (1993). It should be noted that plaintiff does not maintain that section 3329 is itself a money-mandating provision.

tiff vigorously contends that he has met each of the statutory triggers of the Back Pay Act. Not so, defendant argues, asserting that plaintiff's inability to qualify under several provisions of the Act deprives this court of jurisdiction. As a preliminary matter, several decisions suggest that defendant's claims, if adopted, should result not in a dismissal for lack of jurisdiction, but rather for failure to state a claim. *See, e.g., Carpenter,* 28 Fed.Cl. at 198–99 (discussing this issue extensively); *cf. Scholl v. United States,* 54 Fed.Cl. 640 (2002) (analyzing plaintiff's status under the Back Pay Act in considering subject matter jurisdiction as well as whether plaintiff's complaint failed to state a claim). These cases are in accord with the prevailing view that questions whether a particular plaintiff has qualified under a money-mandating provision require consideration of the merits and thus involve a potential failure to state a claim. *See Gollehon Farming v. United States,* 207 F.3d 1373, 1379 (Fed.Cir. 2000); *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999); *Reeves v. United States,* 49 Fed.Cl. 560, 565 (2001); *Hannon v. United States,* 29 Fed.Cl. 142, 149 (1993). Nonetheless, the analysis that follows would be the same even were defendant's arguments more properly viewed as jurisdictional.

In the instant case, it appears that plaintiff was not an "employee" within the meaning of the Back Pay Act at the time of the asserted unjustified or unwarranted personnel action. To qualify as an "employee," an individual must be: (i) "appointed in the civil service" by one of several listed officials; (ii) "engaged in the performance of a Federal function under authority of law or an Executive act;" and (iii) subject to the supervision of the appointing official "while engaged in the performance of the duties of his position." 5 U.S.C. § 2105(a) (1994); *see also* 5 C.F.R. § 550.803 (defining "employee" as an "employee ... of an agency"). As noted by the Court of Claims, "[i]t is obvious from the statutory language that there are three elements to the definition ... and that they are cumulative. A person must satisfy each requirement." *Costner v. United States,* 229 Ct.Cl. 87, 665 F.2d 1016, 1020 (1981); *see also Hedman v. Dep't of Agriculture,* 915 F.2d 1552, 1554 (Fed.Cir.1990). Subsequent

cases confirm that the requirements for these elements are strictly construed. *See Watts v. Office of Personnel Mgmt.,* 814 F.2d 1576, 1579 (Fed.Cir.1987); *Horner v. Acosta,* 803 F.2d 687, 691–92 (Fed.Cir.1986).

The Federal Circuit recently had occasion to construe and apply this tripartite test in *Wallace v. Office of Personnel Management,* 283 F.3d 1360 (Fed.Cir.2002). There, mapping the contours of this analysis, the court held that "[b]ecause the Act waives the government's sovereign immunity only with respect to covered employees, we must strictly construe the meaning of the term 'employee' in favor of the sovereign." *Id.* at 1362. Applying this rule of construction, the court found that "[w]e therefore interpret the Act as applying only to payments made to individuals on account of unjustified or unwarranted personnel actions that occurred while those persons were 'employees,' *i.e.,* individuals engaged in the performance of a federal function." *Id.* It concluded that this construction of the term "employee" not only tracks the "clear" statutory language, but also is consistent with the Office of Personnel Management regulations implementing the Back Pay Act. *Id.* at 1363–64.

Here, plaintiff met none of the requirements for employee status at the time of the alleged adverse personnel action—he was not appointed as an employee at that time, certainly was not engaged in the performance of a federal function, and, necessarily, was not supervised in the performance of such a function. Thus, even if the Defense Department's failure to extend him an offer is considered an unjustified personnel action, that inaction occurred before plaintiff resumed Federal employment. *See Mack v. United States,* 225 Ct.Cl. 187, 635 F.2d 828, 833 (1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). Plaintiff, however, argues that he was an "employee" during the time that defendant failed to timely offer him a job under that portion of the OPM regulations that define an "employee" as including a "former employee." 5 C.F.R. § 550.803. The Federal Circuit, however, made short shrift of the same argument in *Wallace,* where it explained that "although OPM's definition of the term 'employee' also includes 'former employees,' it does so only

for the limited class of former employees who claim entitlement to payment in connection with an unjustified personnel action that occurred during a period of active employment." 283 F.3d at 1363. Plainly, plaintiff does not qualify as such a "former employee."

Nor does the fact that the district court in *Kramer* held that the effective date of plaintiff's appointment should be July 21, 1995, alter this calculus. In so ruling, the district court did not consider the requirements of section 2105(a) and, indeed, specifically indicated that it was not considering the Back Pay Act in adjusting the effective date. *Kramer*, 39 F.Supp.2d at 61. Indeed, even assuming that the district court's ruling can be viewed as altering plaintiff's formal appointment date,[6] that ruling in no way can be construed to hold that, as of July 21, 1995, plaintiff actually was engaged in the performance of a federal function and being super-

vised as such. Accordingly, giving the district court's opinion the broadest breadth possible still leaves plaintiff two requirements shy of being an "employee" for purposes of section 2105(a) and the Back Pay Act. *See McCarley v. Merit Sys. Protection Bd.*, 757 F.2d 278, 280 (Fed.Cir.1985) ("One may be an appointee and never achieve the status of employee. There are three elements to the statute and all must be complied with to achieve the status of an employee."). Further support for this conclusion may be found in cases holding that an individual may not receive back pay under the Back Pay Act relating to a position in which he should have started work, but did not actually perform, *see Costner*, 665 F.2d at 1022,[7] as well as a subset of such cases, *to wit*, those holding that job applicants illegally denied employment are ineligible for back pay.[8] As such, because plaintiff did not perform a federal function, and was not supervised as such, during the period in question,

6. In *Acosta*, 803 F.2d at 692, the Federal Circuit emphasized that "[t]he precedents binding on this court have required that there be a significant degree of formality in the appointment process." *See also Watts*, 814 F.2d at 1579 (noting the various formal indicia of an appointment). *Acosta* and related precedents suggest that a valid legal distinction might be drawn between the effective date of plaintiff's appointment and whether he was actually appointed as of the date for which pay is claimed. For the reasons stated, the court need not consider the impact of this distinction.

7. In *Testan*, the Supreme Court announced, as a general rule, that individuals could not obtain compensation for a position to which they had not yet been appointed, stating:

The present action, of course, is not one concerning a wrongful discharge or a wrongful suspension. In that situation, at least since the Civil Service Act of 1883, the employee is entitled to the emoluments of his position until he has been legally disqualified. *United States v. Wickersham*, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906). There is no claim here that either respondent has been denied the benefit of the position to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not, appointed. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it.

424 U.S. at 402, 96 S.Ct. 948. Later in its opinion, the Court concluded that "Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act." *Id.* at 406, 96

S.Ct. 948; *see also Donovan v. United States*, 580 F.2d 1203, 1208 (3d Cir.1978); *Hunt v. United States*, 52 Fed.Cl. 810, 814 (2002). Seeking to bolster its position further, defendant also relies upon *Dehne v. United States*, 970 F.2d 890 (Fed. Cir.1992). But, while that case unqualifiedly held that military back pay was unavailable for constructive performance, it did so based on the very different language of 37 U.S.C. § 206(a), *see* 970 F.2d at 893–94, and this court, therefore, declines to rely upon this opinion in reaching its decision herein.

8. *See Lambert v. United States*, 4 Cl.Ct. 303, 305, aff'd, 746 F.2d 1490 (Fed.Cir.1984) (DEA employees could not receive back pay for delayed appointments because they did not perform a federal function during the delay period); *Holmes v. United States*, 3 Cl.Ct. 521, 523–24 (1983) (P. Miller, J.) (Back Pay Act provides no applicant denied appointment in violation of regulation); *see also Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073, 1077 (2d Cir. 1990); *Smith v. United States*, 228 Ct.Cl. 168, 654 F.2d 50, 52 (1981). To be sure, language in some of these cases might be read to suggest that the result would be different if an applicant was statutorily assured a job, as was apparently the case herein. Several Comptroller General opinions that were not cited by the parties hold as much. *See, e.g., Matter of Michael Kovalovsky*, 60 Comp. Gen. 442, 444, 1981 WL 22507 (1981). Yet, the Comptroller's opinions are not binding on this court, *see Yeskoo v. United States*, 34 Fed.Cl. 720, 738 (1996), and, in the court's view, are inconsistent with the Federal Circuit's narrow construction of section 2105(a).

he was not an "employee" covered by the Back Pay Act and thus is not entitled to any benefits thereunder.[9]

As a final matter, plaintiff argues that 5 U.S.C. § 5343(a) is a money-mandating statute which supplies Tucker Act jurisdiction here. That statute directs that "[t]he pay of prevailing rate employees shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates." *Id.* Contrary to defendant's claims, this court has twice concluded that this section is money-mandating. *See Averi v. United States,* 23 Cl.Ct. 127, 135 (1991); *Best v. United States,* 10 Cl.Ct. 213, 215–16 (1986); *cf. Moore v. United States,* 21 Cl.Ct. 537, 541 (1990). Moreover, the Federal Circuit has held that an analogous prevailing rate provision, 5 U.S.C. § 5349, which similarly commands that "pay . . . shall be fixed and adjusted," is also money-mandating. *See Bradley v. United States,* 870 F.2d 1578, 1580 (Fed.Cir.1989); *see also Archer v. United States,* 18 Cl.Ct. 603, 607 (1989). In the court's view, these cases establish that section 5343(a) is money-mandating. That said, plaintiff is still unable to invoke this statute because, *inter alia,* he was not a "prevailing rate employee" during the period in question. For these purposes, the same definition of "employee" described above is applicable here. *See* 5 U.S.C. § 2105(a) (indicating that its definition of "employee" is "[f]or the purpose of this title").[10]

### III. Conclusion

This court need go no further. Plaintiff undoubtedly and perhaps reasonably believes

that it is inequitable for him not recover here, given the clear violation of section 3329, as found by the district court. Every violation of a statute, however, does not give rise to a claim in this court. *Testan,* 424 U.S. at 401, 96 S.Ct. 948; *see also Anderson v. Wilson,* 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933) (Cardozo, J.) ("We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it.").

For the foregoing reasons, this court finds that plaintiff's complaint fails to state a claim under RCFC 12(b)(6). The Clerk is hereby ordered to dismiss the complaint. No costs.

---

9. Defendant raises several other arguments as to why plaintiff does not qualify under the Back Pay Act. In the interests of judicial economy, the court does not reach these issues.

10. At the court's request, the parties filed supplemental briefs on the question whether plaintiff's claim is covered by the Civil Service Reform Act of 1978 (CSRA), so as to be excluded from this court's jurisdiction under *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). While defendant correctly points out in its supplemental brief that the CSRA covers appointments, failure to appoint and delays in appointment, *see* 5 U.S.C. § 2302(a)(2)(A)(i), it also candidly admits that the failure to pay salary, standing alone, "is not necessarily a personnel action covered by the CSRA, particularly where

the failure to pay is not directly tied to an action otherwise covered by the CSRA," to wit, a "prohibited personnel practice." A review of 5 U.S.C. § 2302(b), which defines those prohibited practices, does not readily yield a category that seems to cover the asserted adverse action here. Moreover, *Fausto* emphasizes that its holding constitutes an exception to the general rule in favor of judicial review, which presumption may be overcome only by a "persuasive reason." 484 U.S. at 452, 108 S.Ct. 668. Finding no such reason apparent here, this court thereby declines to dismiss this case for lack of jurisdiction. *See Worthington v. United States,* 168 F.3d 24, 27 (Fed.Cir.1999); *Zervas v. United States,* 26 Cl.Ct. 1425, 1431 (1992).