# United States Court of Appeals for the Federal Circuit

---

**SHERI LYNN DENNEY,**
*Petitioner,*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2012-3094

---

Petition for review of the Merit Systems Protection Board in no. DC0842100846-I-1.

---

Decided: February 8, 2013

---

RICHARD L. SWICK, Swick & Shapiro, P.C., of Washington, DC, argued for petitioner.

HILLARY A. STERN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.

---

Before MOORE, SCHALL, and BRYSON,[1] *Circuit Judges*.

MOORE, *Circuit Judge*.

Sheri Lynn Denney appeals from the decision of the Merit Systems Protection Board (Board) sustaining the Office of Personnel Management's (OPM) determination that "availability pay" should not be included in the calculation of Ms. Denney's retirement annuity. *Denney v. OPM*, 117 M.S.P.R. 269 (2012). For the reasons set forth below, we *affirm*.

## BACKGROUND

Ms. Denney served as a criminal investigator or special FBI agent from 1983 until her retirement in 2008. From 1983 until early 2001, Ms. Denney was eligible for and received "availability pay" under 5 U.S.C. § 5545a. Availability pay is a form of premium pay equal to "25 percent of the rate of basic pay for the position." 5 U.S.C. § 5545a(b), (h)(1). To be eligible for availability pay, a criminal investigator must work at least forty hours per week (full-time) and actually work or be available to work an additional two hours per regular workday. 5 U.S.C. § 5545a(d). Further, both the investigator and her supervisor must annually certify that "the investigator has met, and is expected to meet," these additional work requirements. *Id.* § 5545(e)(1). Beginning February 25, 2001, Ms. Denney began working part-time and was no longer eligible for, and no longer received, availability pay. Although Ms. Denney worked full-time from May 20, 2001 to August 26, 2001, she was not eligible for and did not receive availability pay at any time after February 25, 2001. Ms. Denney retired on December 31, 2008.

---

[1]  Judge Bryson assumed senior status on January 7, 2013.

The basic method for calculating an annuity for an employee with some full-time service and some part-time service like Ms. Denney is a two-step process:

> In computing an annuity under this subchapter for an employee whose service includes service performed on a part-time basis--
>
> (A) the average pay of the employee, to the extent that it includes pay for service performed in any position on a part-time basis, shall be determined by using the annual rate of basic pay that would be payable for full-time service in the position; and
>
> (B) the benefit so computed shall then be multiplied by a fraction equal to the ratio which the employee's actual service, as determined by prorating the employee's total service to reflect the service that was performed on a part-time basis, bears to the total service that would be creditable for the employee if all of the service had been performed on a full-time basis.

5 U.S.C. § 8415(f)(1) (2006)[2]. The first step (subpart A) is to calculate "average pay"—using the "annual rate of basic pay that would be payable for full-time service in the position"—of the employee for any period of three consecutive years of service that produces the highest average ("high three" years). *Id.* §§ 8415(f)(1), 8331(4). "Basic pay" in the context of a retirement annuity calculation includes various forms of additional pay that certain employees may receive. *See generally* § 8331(3). These forms of additional pay are over and above the base pay for the position and include overtime pay, special expense allowances, physicians comparability allowances, premi-

---

[2]    Section 8415 was amended in 2009; the relevant provision is now § 8415(g)(1).

um pay, hazard pay, and "availability pay . . . received by a criminal investigator under section 5545a of this title." *Id.* §§ 8331(3), 8331(3)(E)(i). The second step of the annuity calculation (subpart B) is to prorate the calculated average pay in accordance with the employee's ratio of full-time to part-time service. *Id.* § 8415(f)(1)(B).

In this case, OPM determined that Ms. Denney's last three years of service, 2006-2008, were her "high three" years because those were the three consecutive years of creditable service during which she earned the most using annualized full-time basic pay rates. In calculating average pay over the high three years, OPM did not include availability pay because Ms. Denney was not eligible for and did not receive availability pay during that period of time. For the second step, OPM calculated the ratio of Ms. Denney's time spent in full-time service to time spent in part-time service at 85%. Ms. Denney does not challenge OPM's "high three" determination or its full-time to part-time ratio calculation.

Ms. Denney appealed OPM's average pay calculation and the administrative judge reversed, concluding that OPM erred by not including availability pay during Ms. Denney's high three years of service. OPM appealed to the Board, which sustained OPM's annuity calculation. Ms. Denney's appeal to this court presents a single question: whether or not her "average pay" calculation should include availability pay. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We affirm Board decisions unless they were "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's statutory interpretation

de novo.  *Wallace v. OPM*, 283 F.3d 1360, 1361 (Fed. Cir. 2002).

A.

Ms. Denney argues that every full-time special agent is required to work ten-hour days and is automatically entitled to availability pay under 5 U.S.C. § 5545a.  Ms. Denney argues that because the average pay calculation under § 8415(f)(1)(A) is based on full-time service, her average pay calculation should have included availability pay because she would have been entitled to it during her high three years of service had she worked full-time.

We disagree.  Ms. Denney's argument hinges on the notion that availability pay is automatically part of basic pay.  The relevant statutory language as well as the facts of this case, however, demonstrate that the forms of additional pay enumerated in § 8331(3), including availability pay, are not "automatically" part of basic pay for retirement annuity purposes.  Rather, the plain meaning of the relevant statutes demonstrates that the forms of additional pay enumerated in § 8331(3) are part of basic pay for retirement annuity purposes only when an employee was eligible for and received such additional pay during the employee's high three years of service.

Section 8415(f) defines the two-step annuity calculation process for "an employee whose service includes service performed on a part-time basis."  It provides that "average pay . . . shall be determined by using the annual rate of basic pay that would be payable for full-time service in the position."  5 U.S.C. § 8415(f)(1)(A).  It does not follow that availability pay, or any other form of additional pay defined in § 8331(3), should be included in the calculation of average pay in cases in which the employee was not eligible for and did not receive such pay during the pertinent period of time.

It is clear that § 8415(f)'s reference to "annual rate of basic pay" does not automatically include the various forms of additional pay enumerated in § 8331(3) because those forms of additional pay relate to different employment positions and conditions. It is also clear that the forms of additional pay enumerated in § 8331(3) do not naturally flow from the respective employment position alone because they also include eligibility requirements.

For example, § 8813(3)(D) includes, as part of basic pay, "with respect to a law enforcement officer, premium pay under section 5545(c)(2) of this title." Section 5545(c)(2) provides premium pay of 10-25% above the "rate of basic pay for the position" on an annual basis for an employee whose position "requires substantial amounts of irregular, unscheduled overtime duty." Quite clearly, this premium pay does not naturally flow from the law enforcement position by itself but rather is available in addition to the "rate of basic pay for the position" only to those law enforcement officers who work substantial amounts of irregular, unscheduled overtime. Similarly, § 8331(3)(G) discusses additional pay for customs officers. The referenced eligibility statute (the Act of February 13, 1911, as amended and codified at 19 U.S.C. § 267) provides overtime compensation for certain customs officers:

> Subject to [certain limitations], a customs officer who is officially assigned to perform work in excess of 40 hours in the administrative workweek of the officer or in excess of 8 hours a day shall be compensated for that work at an hourly rate of pay that is equal to 2 times the hourly rate of the basic pay of the officer.

19 U.S.C. § 267(a)(1). This form of additional pay likewise does not naturally flow from the position of customs officer but instead is available to customs officers only for

the overtime hours they are actually required to work. These examples illustrate that the additional pay items enumerated in § 8331(3) are over and above § 8514(f)(1)(A)'s "annual rate of basic rate . . . for full-time service in the position" and are considered retirement annuity "basic pay" for employees who were eligible for and received the additional pay. Such additional pay is not, however, automatic because it does not naturally flow from an employment position alone.

The form of additional pay at issue in this case, availability pay, is addressed in § 8331(3)(E)(i). That section states that availability pay "received by a criminal investigator under section 5545a" is considered basic pay for retirement annuity purposes. The "received by" language in this particular section expressly confirms that availability pay, like the forms of additional pay previously discussed, is not automatic. Rather, for availability pay to be included in Ms. Denney's retirement annuity calculation, she must have "received" it. This is entirely logical given that, to be eligible for such pay, Ms. Denney had to meet the requirements of § 5545a, which specifies (1) working a full-time forty-hour week, (2) working or being available to work unscheduled duty for an average of two additional duty hours per workday, and (3) certifying and obtaining a supervisor's certification of such availability.

For a large part of her service, Ms. Denney met the requirements of § 5545a and, therefore, was eligible for and received availability pay. However, for the three-consecutive-year period of employment during which Ms. Denney's annual pay was the highest, 2006-2008, she was not eligible for and did not receive availability pay. During this period of time, Ms. Denney was not required to work a forty-hour week and was not required to certify and obtain supervisory certification of her availability to work an additional two hours per day of unscheduled service. Because availability pay was not "received by

[Ms. Denney] under section 5545a" during these "high three" years, OPM appropriately excluded availability pay from her annuity calculation.

Additional facts present in this case confirm that availability pay for Ms. Denney was not automatic. For approximately three months in 2001, Ms. Denney returned to a full-time work schedule but was not eligible for and did not receive availability pay. This fact demonstrates that availability pay was not automatically part of Ms. Denney's basic pay. This conclusion is entirely consistent with our prior opinions that have addressed availability pay in different employment contexts. *See Caven v. Merit Sys. Prot. Bd.*, 392 F.3d 1378, 1381 (Fed. Cir. 2004) ("[A]vailability pay . . . is not automatic, however, but requires compliance with section 5545a, which includes certification by both the law enforcement officer and his superior that the officer has met the statutory requirements."); *Martinez v. Merit Sys. Prot. Bd.*, 126 F.3d 1480, 1482 (Fed. Cir. 1997) ("Since availability pay is premium pay, it is not part of the 'rate of basic pay' for a criminal investigator.").

It is unfortunate that Ms. Denney's high three years of service occurred when she was not eligible for and did not receive availability pay. But the language of the relevant statutory provisions and facts of this case persuade us that availability pay is not automatic and should not be included in the calculation of retirement annuity "average pay" when the employee was not eligible for and did not receive availability pay during her high three years of service.

## B.

Ms. Denney contends that excluding availability pay from her annuity calculation is inequitable because it penalizes her for working part-time during her high three years of service. Ms. Denney argues that she "is not

asking for 'bonus' or 'overtime' pay to be added; she is asking that the regulations requiring the addition of premium pay be followed to achieve equal pay for equal service." Pet'r Br. 12.

We find Ms. Denney's argument lacks merit. She is not being penalized for working part-time during her high three years of service. In determining Ms. Denney's high three years, OPM included availability pay during the period of time that Ms. Denney received it. Oral Arg. at 7:20-11:13, 26:55-30:28, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 12-3094.mp3; *see* App'x to Resp't Br. 4. OPM found, however, that Ms. Denney's "high three" years occurred during a period of time when she was not eligible for and did not receive availability pay. In other words, Ms. Denney's full-time pay during her high three years, 2006-2008, was greater *without availability pay* than any of her previous years of service *with availability pay*. Therefore, including availability pay during her high three years, when she was not required to meet the eligibility requirements for receiving availability pay, would result in an anomaly because Ms. Denney's rate of "average pay" for annuity purposes would be based on an adjusted salary level greater than she received at any point during her employment. The statutory language does not support calculating her average salary during her "high three" years based on pay for which she was not eligible and which she did not receive. That result would not achieve "equal pay for equal service" as Ms. Denney contends, and there is no evidence that Congress intended that result.

## CONCLUSION

We have considered all of Ms. Denney's remaining arguments and find them to be without merit. For the reasons set forth above, the decision of the Board is

## **AFFIRMED.**

### COSTS

No costs.